## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. 4:07CV3283 |
| | ) | |
| JAMES DANIEL SCHILKE, | ) | Bankruptcy No. 06-41813 |
| | ) | Chapter 12 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | MEMORANDUM OPINION |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES DANIEL SCHILKE, | ) | |
| | ) | |
| Appellee. | ) | |

This matter is before the Court on appeal from a memorandum and order issued on November 27, 2007, by the United States Bankruptcy Court for the District of Nebraska[1] (hereafter the "Bankruptcy Court") confirming Debtor James Daniel Schilke's Chapter 12 Plan ("the Plan") over an objection filed by the United States. The United States filed this appeal challenging the Bankruptcy Court's disposition of the United States' objection to the Plan, and the Bankruptcy Court's subsequent confirmation of the Plan. The United States has elected to have the appeal heard by the District Court. (Filing No. 4). The matter has been fully briefed [2] and is ripe for decision by this Court.[3]

---

[1] The Honorable Thomas L. Saladino, Chief Judge, United States Bankruptcy Court for the District of Nebraska.

[2] (Filing Nos. 9, 14, and 17). The United States also filed a Notice of Supplemental Authority (Filing No. 19).

[3] The Court has determined that oral argument will not be allowed as "the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument." Fed. R. Bankr. P. 8012.

**Jurisdiction**

This Court has jurisdiction over appeals from final judgments of the bankruptcy court pursuant to 28 U.S.C. § 158(a).  *See In re Gaines*, 932 F.2d 729, 731 (8th Cir. 1991).

**Standard of Review**

"'When a bankruptcy court's judgment is appealed to the district court, the district court acts as an appellate court and reviews the bankruptcy court's legal determinations de novo and findings of fact for clear error.'" *In re Falcon Prods., Inc.*, 497 F.3d 838, 841 (8th Cir. 2007) (quoting *In re Fairfield Pagosa, Inc.*, 97 F.3d 247, 252 (8th Cir. 1996)).  *See also* Fed. R. Bankr. P. 8013.  The issue before this Court is the Bankruptcy Court's interpretation of the Bankruptcy Code and as such is an issue of law subject to de novo review.  *See In re Cedar Shore Resort, Inc.*, 235 F.3d 375, 379 (8th Cir. 2000).

**Factual and Procedural Background**

The Appellant, James Daniel Schilke ("Schilke"), filed a voluntary bankruptcy petition under Chapter 12 of the Bankruptcy Code on December 27, 2006.  Schilke filed his Chapter 12 Plan on March 22, 2007.  The Plan provided, *inter alia*, for the sale of certain farm assets, namely real estate and breeding livestock.  The capital gains taxes on the sale of these farm assets, estimated at $33,108.00, was to "be treated as an unsecured debt without priority under 11 USC § 507 as provided in 11 USC § 1222 [a] (2) (A)" (Bankr. Case No. 06-41813, Filing No. 13).  The United States, on behalf of the Internal Revenue Service, filed an objection to that provision of the Plan and, after a hearing on the matter, the Bankruptcy Court overruled the government's objection and confirmed the Plan on November 27, 2007.

2

In its November 27, 2007, memorandum, the Bankruptcy Court observed that "[a]s of this date, only two published cases have interpreted § 1222(a)(2)(A) as it relates to post-petition taxes."[4] *In re Schilke*, 379 B.R. 899, 901 (Bankr. D. Neb. 2007). Those decisions were from the bankruptcy courts for the Northern District of Iowa and the District of Arizona. *See In re Knudsen*, 356 B.R. 480 (Bankr. N.D. Iowa 2006)[5] and *In re Hall,* 376 B.R. 741 (Bankr. D. Ariz. 2007)[6]. In *In re Knudsen*, the bankruptcy court held that post-petition taxes resulting from the sale of farm assets could be classified as administrative expenses entitled to priority under 11 U.S.C. § 503(b)(1)(B) and as such could be treated as unsecured claims without priority under 11 U.S.C. § 1222(a)(2)(A). *In re Knudsen*, 356 B.R. at 492. The opposite conclusion was reached by the bankruptcy court in *In re Hall*. In that case, the bankruptcy court held that post-petition taxes could not be considered as administrative expenses because a taxable estate was not created in a Chapter 12 bankruptcy and therefore 11 U.S.C. § 1222(a)(2)(A) did not apply to such taxes. *In re Hall*, 376 B.R. at 746.

The Bankruptcy Court in Schilke's case noted that the government's position fell in line with the legal reasoning of the bankruptcy court in *In re Hall*, that "post-petition taxes are not incurred by the estate, because the estate is not a taxable entity, and therefore it

---

[4]Section 1222(a)(2)(A) was added to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

[5]Affirmed in part, reversed in part and remanded by the District Court for the Northern District of Iowa. *In re Knudsen*, 389 B.R. 643 (N.D. Iowa 2008).

[6]Reversed on appeal by the District Court of Arizona. *In re Hall*, Case 4:07cv679-DCB, Filing No. 21 (D. Ariz. Aug. 6. 2008).

3

cannot incur tax liabilites." *In re Schilke*, 379 B.R. at 901.  In response to the government's argument, the Bankruptcy Court held that

> . . . even though a Chapter 12 bankruptcy estate is not a separate taxable entity, the estate does exist nonetheless.  The estate consists of all property of the debtor on the date of filing, all property that the debtor acquires after commencement of the case, and all earnings from services performed by the debtor after commencement of the case. . . . The taxes at issue are created by the sale of property of the estate by Debtor.  I do not believe that the language of § 503(b)(1)(B) regarding any tax "incurred by the estate" was intended to apply only to those situations where the estate itself is a separate taxable entity.  In fact, "incurred by the estate" has been interpreted to simply mean incurred post-petition.

*In re Schilke*, 379 B.R. at 902 (citing *Missouri Dep't of Revenue v. L.J. O'Neill Shoe Co.*, 64 F.3d 1146, 1149 (8th Cir. 1995)).

In confirming Schilke's Chapter 12 Plan, the Bankruptcy Court rejected the analysis of the *Hall* court and instead chose to follow the result and reasoning of the bankruptcy court in *In re Knudsen*.

> Faced with the choice of following the result in *Knudsen* or the result in *Hall*, I feel that *Knudsen* produces the more appropriate result when considering the apparent intent of the statute - that is, to help farmers reorganize.  The legislative history quoted above relating to an earlier bill to amend § 1222(a)(2) in an identical manner clearly shows that the language used was intended to allow the debtor to use the amendments to § 1222(a)(2) for taxes generated during the bankruptcy reorganization from the sale of assets used in a farming operation.

*In re Schilke*, 379 B.R. at 902.

The United States filed its Notice of Appeal on December 28, 2007, challenging the Bankruptcy Court's confirmation of Schilke's Chapter 12 Plan, and elected to have the appeal heard by the District Court.

**Issue**

The issue presented on appeal is "whether the Bankruptcy Court erred in attributing the taxes arising from the postpetition sale of real estate and livestock to the estate and not to the Debtor, and in treating the resulting claim as an unsecured claim under 11 U.S.C.§ 1222(a)(2)(A)."  (Appellant's brief Filing No. 9, p. 4).

**Discussion**

Section 1222(a)(2) of the Bankruptcy Code, which pertains to the Chapter 12 Plan, was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") to include the following subsection which is at issue in the appeal before this Court:

> (a)  The plan shall –
> . . .
> (2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507, unless –
>
>> (A) the claim is a claim owed to a governmental unit that arises as a result of the sale, transfer, exchange, or other disposition of any farm asset used in the debtor's farming operation, in which case the claim shall be treated as an unsecured claim that is not entitled to priority under section 507, but the debt shall be treated in such manner only if the debtor receives a discharge . . .

11 U.S.C. § 1222(a)(2)(A)

Under § 507, there are two categories of taxes entitled to priority.  Section 507(a)(8) gives priority status to certain pre-petition taxes.  Section 507(a)(2), in part, gives priority status to "administrative expenses allowed under section 503(b)."  11 U.S.C. § 507(a)(2). Section 503(b) allows for "any tax . . . incurred by the estate, whether secured or unsecured" to be treated as an administrative expense.  11 U.S.C. § 503(b)(1)(B).

5

There is no dispute that the taxes resulting from the post-petition sale of Schilke's farm assets do not qualify as pre-petition taxes subject to priority treatment under § 507(a)(8). The controversy exists as to whether those taxes should be considered administrative expenses, entitling them to priority status under § 507(a)(2), and thereby allowing the Chapter 12 Plan to treat them as nonpriority unsecured claims pursuant to § 1222(a)(2)(A).

When this issue was before the Bankruptcy Court, only two published cases determining the status of post-petition taxes under the BAPCPA's amendments to § 1222(a)(2)(A) were available to provide guidance to the parties and the court. The bankruptcy courts in those cases came to opposite conclusions.[7] As discussed above, the Bankruptcy Court followed the reasoning in *In re Knudsen* and confirmed Schilke's Chapter 12 Plan over the government's objection. Since that November 27, 2007, ruling a small number of additional courts have addressed the application of § 1222(a)(2)(A) to post-petition taxes.[8] Those later court decisions consistently rejected the government's position and concluded that farmers may treat taxes incurred from the post-petition sale of farm assets as administrative expenses under § 503(b)(1)(B)(i) and, as such, those taxes are subject to favorable treatment under § 1222(a)(2)(A).

In *In re Dawes*, 382 B.R. 509 (Bankr. D. Kan. 2008) the bankruptcy court found that the phrase "incurred by the estate" was ambiguous and looked to the legislative history of

---

[7]*Compare In re Knudsen*, 356 B.R. 480 (Bankr. N.D. Iowa 2006), and *In re Hall,* 376 B.R. 741 (Bankr. D. Ariz. 2007).

[8]*See In re Dawes*, 382 B.R. 509 (Bankr. D. Kan. 2008);  *In re Knudsen*, 389 B.R. 643 (N.D. Iowa 2008); *In re Hall*, Case 4:07cv679-DCB, Filing No. 21 (D. Ariz. Aug. 6. 2008).

the 1978 Bankruptcy Code and the 1980 Bankruptcy Tax Act to determine its meaning. *Id.* at 515-16. That analysis led the court to "conclude that the use of the phrase 'incurred by the estate' in the definition of administrative expenses in § 503(b)(1)(B)(i) has reference to the time when the tax liability is incurred and not to whether the estate is a separate taxable entity." *Id.* at 516-17. The court further observed that "[i]f, as contended by the IRS, only capital gains taxes arising from prepetition sales are covered by § 1222(a)(2)(A), the provision would not apply to all 'farm debtors,' but only to farmers who had the foresight to liquidate assets before filing." *Id.* at 519. "Construing § 1222(a)(2)(A) to apply to postpetition sales provides debtors and their counsel when formulating a plan the flexibility intended by Congress to make decisions driven by farming and business factors, rather than potential adverse tax consequences." *Id.* at 519.

The decision of the bankruptcy court in *In re Knudsen* was appealed by the government. In its ruling, the district court affirmed the bankruptcy court's conclusion that post-petition taxes may be treated as administrative expenses and therefore subject to treatment as an unsecured claim without priority under § 1222(a)(2)(A). *In re Knudsen*, 389 B.R. 643 (N.D. Iowa 2008). The district court in *In re Knudsen* adopted the *Dawes* court's conclusion that the "legislative history makes clear that the phrase 'incurred by the estate' in § 503(b)(1)(B)(i) refers to when tax liability is incurred rather than to the existence of the estate as a separate taxable entity." *Id.* at 679-80. In its thorough discussion, the district court adopted much of the language of the bankruptcy courts in *In re Schilke* and *In re Dawes* as to the meaning of "incurred by the estate." The court came to the same conclusion, that "incurred by the estate" mean "incurred post-petition." *Id.* at 682.

7

The government contends that the Bankruptcy Court erred by allowing Schilke, in his Chapter 12 Plan, to treat taxes from the post-petition sale of farm assets as administrative expenses entitled to beneficial treatment under BAPCPA's amendment to § 1222(a)(2). The bulk of the government's argument is based on its position that the post-petition tax liability cannot be considered an administrative expense "incurred by the bankruptcy estate, because the estate in a Chapter 12 bankruptcy is not treated as a separate taxable entity under the Internal Revenue Code." (Appellant's Brief, Filing No. 9, p. 9). In its reply brief, the United States further argues that the analysis of legislative intent by the district court in *In re Knudsen* was misplaced and unnecessary in the face of the unambiguous language of the amendments. (Appellant's Reply Brief, Filing No. 17). The United States argues that the absence of specific language in the Bankruptcy Code to include post-petition tax claims among priority claims clearly indicates Congress's intent to exclude them from such treatment. The United States further criticizes the district court in *In re Knudsen* for its reliance on comments made by Senator Charles Grassley of Iowa, in introducing an earlier bill that did not pass, but contained a proposed amendment to § 1222(a)(2) identical to the subsequent BAPCPA amendment that is the subject of this appeal.[9] The government argues that instead the Court should refer to the overall statutory schemes of the Bankruptcy Code and the Internal Revenue Code to resolve any issues as to statutory meaning.

---

[9]"Senator Grassley referred to the need to relieve family farmers seeking reorganization from the 'crushing tax liability if they need to sell livestock or land in order to reorganize their business affairs' and from the need to pay the IRS in full 'for any tax liabilities generated during a bankruptcy reorganization' and to 'reduc[e] the priority of taxes during proceedings.'" *In re Knudsen*, 389 B.R. at 676 (quoting 145 Cong. Rec. S750-02, S764, 1999 WL 20426 (Jan. 20, 1999) (Statement of Sen. Grassley on S.260))

In his opposing brief, Schilke contends that the Bankruptcy Court's decision was correct, and Schilke quotes, verbatim, a significant portion of the opinion of the district court in *In re Knudsen*. (Filing No. 17, pp. 6-17).

Persuasive case law supports the conclusion that farmer debtors should be allowed to treat post-petition taxes resulting from the sale of farm assets as administrative expenses of the estate, causing those taxes to be classified as unsecured claims without priority and subject to dismissal under § 1222(a)(2)(A). The analysis conducted by the bankruptcy court in *Dawes*, and the appellate review by the district courts in *In re Knudsen* and *In re Hall,* were thorough and well-reasoned. I find it unnecessary for the Bankruptcy Code to create a separate taxable Chapter 12 estate in order for post-petition taxes to be treated as administrative expenses subject to § 1222(a)(2)(A). The Bankruptcy Court's interpretation of the Bankruptcy Code also is consistent with Congress's intent to provide meaningful relief to family farmers seeking refuge under Chapter 12, and the Bankruptcy Court's decision should be affirmed.

## Conclusion

For the reasons stated above, the judgment of the Bankruptcy Court will be affirmed. A separate Order and Judgment will be entered in accordance with this Memorandum Opinion.

DATED this 9th day of September, 2008.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge